144332

CUNNINGHAM v. INDEPENDENCE INSURANCE COMPANY

(189 S. E., 800)

*Messrs. Price & Poag* and *Cooper & Maher,* for appellants,

*Messrs. Jennings & Jennings,* for respondent.

February 8, 1937.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This in an action in tort for the alleged cancellation and breach of a contract of insurance issued respondent by the Liberty Life Insurance Company of Greenville, S. C. The complaint alleges that the original policy was issued to the respondent on the 19th day of September, 1927, and that thereafter, on or about September 1, 1930, the appellant, after having purchased the sick and accident business of the Liberty Life Insurance Company, canceled the policy by issuing a policy in the Independence Insurance Company (appellant herein), which was not of equal value with the original policy. The answer of appellant was a general denial.

When the case was called for trial in the County Court of Richland County, counsel for the appellant moved the Court to require the respondent to elect whether she would proceed on the cause of action for fraudulent breach of contract or on the cause of action of fraud and deceit. Counsel for the respondent stated that respondent elected to proceed on the cause of action for breach of contract, accompanied by an act of fraud.

While the respondent was on the stand under cross-examination, and before the cross-examination had been concluded, counsel for respondent asserted his intention to take a voluntary nonsuit. Appellant objected to the voluntary nonsuit, claiming the right to complete the cross-examination of respondent, which was allowed, and at the con-

clusion of respondent's cross-examination moved for a nonsuit upon the merits. After considerable discussion and argument, the Court refused appellant's motion for a nonsuit upon the merits, and thereafter granted respondent a voluntary nonsuit as a matter of law, holding that the respondent had the right to a voluntary nonsuit as a matter of law.

This appeal raises two issues:

(1) Did the trial Judge err in refusing to grant the motion of the appellant for a nonsuit, founded on the ground that there was no evidence to support the respondent's alleged cause of action?

(2) Did the trial Judge err in granting respondent's motion that she be permitted to take a v o l u n t a r y nonsuit, founded on the ground that she was entitled to it as a matter of law and right?

We will discuss the questions involved in inverse order. Respondent took the position in the lower Court that she was entitled as a matter of law and right to take a voluntary nonsuit, but in the typewritten argument filed with this Court concedes that the granting of a motion for a voluntary nonsuit, after a trial of the case has been entered upon, is within the discretion of the trial Judge. That this is the established law of this State is beyond question. See cases of *State v. Southern Ry. Co.,* 82 S. C., 12, 62 S. E., 1116; *Pee Dee River Lumber Co. v. Fountain,* 90 S. C., 122, 72 S. E., 885; *Armitage v. Seaboard Air Line R. Co.,* 166 S. C., 21, 164 S. E., 169; *Barr v. Witsell,* 173 S. C., 199, 175 S. E., 436.

The above-cited cases in no wise conflict with the decisions of this Court that a plaintiff may, before entering upon a trial of the case, as a matter of right and law, discontinue his case or take a voluntary nonsuit unless the defendant has set up a counterclaim, or pleaded affirmative relief.

Can there be any question that the trial Judge based his order granting the motion of respondent for a voluntary non-

suit on any ground other than that respondent was entitled thereto as a matter of law and right, or stated in another way, can it be claimed that the order granting respondent's motion for a voluntary nonsuit was based on the discretion of the Court?

The question of a nonsuit first arose when the trial Judge overruled an objection of respondent's counsel to the line of cross-examination of respondent. We here quote from the record:

"Mr. John Jennings: Now, if it is the intention of the Court to go ahead and try the case on that kind of evidence, I will take a voluntary non-suit, and get out of Court.

"Mr. Cooper: We ask the Court, now, not to grant a non-suit. We are entitled to finish with this witness, whether counsel quits the case or not.

Mr. John Jennings: We have the right to a non-suit at any time we wish to take one, your Honor.

"The Court: Alright, sir, that is your privilege, go ahead."

"Mr. Price: We object to them taking a non-suit at this time, your Honor.

"The Court: My conception of the law, with regard to a non-suit, is that he has the right to take a non-suit at any time during the trial of the case. Now, if you have any authority to the contrary, I will be glad to consider it before I rule."

"Mr. Cooper: Now, then, your Honor, we wish to resist the motion of the plaintiff for a voluntary non-suit, as a matter of right, and as I understand it, that would be the only way your Honor would grant it. If you didn't think that they were entitled to a non-suit, as a matter of right, I am certain that your honor wouldn't grant it.

"The Court: As a matter of law, Mr. Cooper."

The order granting respondent's motion is as follows: "The plaintiff, having made a motion for a voluntary nonsuit, this Court holds, as a matter of law, that the plaintiff is entitled to the motion, and the motion is granted."

It will readily be seen from the foregoing that the order granting the motion for a voluntary nonsuit was bottomed entirely upon the theory that respondent was entitled to same as a matter of law and right, and we are therefore constrained to sustain appellant's Exception 2.

In passing upon the other issue raised by this appeal, it will be necessary to discuss briefly the testimony.

The respondent testified that in 1927 she applied for and received from Liberty Life Insurance Company an insurance policy, No. 362469, in the name of Dora Williams, which was changed to Dora Cunningham when she married; that she did not apply to Independence Insurance Company (appellant herein) for a policy; that in 1930 a policy issued by appellant, bearing the No. 1209, to Dora Cunningham (respondent herein), was left at her home in her absence. (Both policies were put in evidence, and there is printed on the back of the Independence policy the following: "This policy is issued and accepted as a substitute for a similar one of The Liberty Life Insurance Company, and that policy is hereby cancelled"); that "all along" from 1930 appellant kept asking for the Liberty policy which she refused to surrender, and in 1935 appellant again asked for the Liberty policy, and, when she refused to give it up, "they said that it didn't matter, that it was cancelled." This statement was made by the inspector for appellant, who was in Court when the case was being tried. Respondent paid her premiums promptly, and, after the Independence policy was issued her, receipts for her premiums were issued by appellant. On cross-examination, respondent testified she kept her Liberty policy, refused to accept the Independence policy, and that all premiums paid were on the Liberty policy; that she filed and was paid several sick claims during the years 1931, 1932, 1933, 1934, and 1935, and thought they were under the Liberty policy. (The Liberty policy carries a "Weekly Disability Benefit" of $5.00 and the Independence

policy a "Weekly Sick Benefit" of $5.00. The claims filed and paid were each for $5.00.

Respondent never at any time surrendered her policy in the Liberty Life Insurance Company, and all premiums due thereon were kept paid. Under the terms of the policy, it could be canceled only for nonpayment of premiums, and this policy was therefore in full force and effect, notwithstanding the written statement on the back of the Independence policy, and the verbal statement of the inspector for appellant, because, as stated in *Hollings v. Bankers' Union,* 63 S. C., 192, at page 198, 41 S. E., 90, 92, "Parties making a contract, they must stand to it, and one party cannot revoke the contract at his will."

A case very much in point with the case under discussion is *Herndon v. Continental Casualty Co.,* 144 S. C., 448, 142 S. E., 648, 649. The plaintiff, in that case, alleged the issuance to him by defendant of a policy of insurance on his life, the payment of the premiums, the cancellation of the policy by defendant, without plaintiff's consent or approval, during the time the premiums were being paid, and the continuance by defendant of the collection of premiums from plaintiff, "willfully, fraudulently, and unlawfully, with intent to cheat and defraud the plaintiff, and willfully, fraudulently, and unlawfully collected, received, and converted the said money to its own and separate use," etc. The plaintiff further alleged repeated demands for the refund of the premiums collected, after the "cancellation" of the policy, and that defendant had willfully, fraudulently, and unlawfully refused to return the money.

The defendant demurred to the complaint on the ground that it failed to state a cause of action, which demurrer was overruled.

Mr. Justice Carter, writing the opinion of the Court reversing the trial Judge, had this to say: "As we view the complaint, it does not state a cause of action. Since, under the allegations of the complaint, the defendant collected the

premiums on the policy for the period of time in question and did not refund the same, the alleged cancellation of the policy by the defendant on August 1, 1924, was illegal, and the policy was of force, and had the plaintiff died or received an injury within that period of time, October 27, 1919, to November 10, 1925, the defendant would have been liable under the policy for the amount stipulated therein. It is a recognized rule of law when a policy of insurance is issued, and the premiums paid and not refunded, such policy cannot be canceled by the insurance company, whether notice of such attempted cancellation be given the policy holder or not. The fact that the complaint contains an allegation that the premiums in question were fraudulently collected does not state a cause of action, when it appears from the facts alleged and the law applicable thereto, as in this case, that the policy was of force during the period of time when the collection of the premium was made. The addition of the words 'cheat and defraud', etc., in the allegations, in connection with the other allegations contained in the complaint, does not in our opinion make out a cause of action."

The language, and the principle involved, was approved and adopted by the Court in *Kelly v. Guaranty Fire Insurance Co.,* 176 S. C., 275, 180 S. E., 35.

The *Herndon case, supra,* was cited in *Bailey v. North Carolina Mutual Life Ins. Co.,* 173 S. C., 131, 175 S. E., 73, 74, which was an action for the fraudulent cancellation and breach of an insurance contract. Quoting therefrom:

"The fact that the insured still had the policy in her possession, and the receipt of the company for the weekly premium paid on February 15, 1932, which kept the policy in force for one week thereafter, clearly established the fact that the policy was in full force on February 20th, the day on which the suit was instituted.

"The trial Judge, therefore, was clearly right when he ruled to the effect, on the motion for a nonsuit, that, at the time of the institution of the suit, the policy was in force,

the insured had all her rights thereunder, and that if she had died during that time the beneficiary would have been entitled to receive the death benefit. There being no cancellation of the policy, and no release on the part of the insured of any right she had under its terms, there could not, therefore, have been any damage to the insured on that account. Since there was no cancellation and no release, it follows, of course, there could not have been any fraudulent cancellation, or any release executed on account of the fraudulent conduct of the agent of the company. Accordingly, there was no evidence to sustain in any way the alleged cause of action for either actual or punitive damages, on account of the alleged cancellation of the policy, or the alleged obtaining of the release through fraudulent conduct and representatives; and the nonsuit, so far as it affected those claims, was proper. See *Herndon v. Continental Casualty Co.*, 144 S. C., 448, 142 S. E., 648."

Under the testimony of respondent and the law as it has been written in this State with reference to the attempted cancellation of insurance contracts, the motion of appellant for an involuntary nonsuit, that is, a nonsuit on the merits of the case, should have been granted, and the exception alleging error thereabout is sustained.

The case is remanded to the County Court for the entry of the conclusions of this Court.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and FISHBURNE concur.